IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH SICKLER,

        Plaintiff,               No. 2:11-cv-0205 WBS CKD P

    vs.

T. CURTIS, et al.,

        Defendants.       <u>ORDER, FINDINGS AND</u>

                                 <u>RECOMMENDATIONS</u>

_____/

## I. INTRODUCTION

Plaintiff is a state prisoner proceeding *pro se* with a civil rights complaint filed pursuant to 42 U.S.C. § 1983.  Plaintiff's complaint raises two claims against defendant Curtis, who was a Licensed Vocational Nurse (LVN) at Mule Creek State Prison.  Plaintiff alleges that defendant Curtis violated plaintiff's civil rights by being deliberately indifferent to his serious medical needs when she was without a "med-pack" during evening pill distribution such that on-site medical treatment could not be performed on plaintiff following an inmate fight.  He also asserts that Curtis improperly treated plaintiff several minutes after the prisoner fight and should have referred him to the Triage Treatment and Assessment facility rather than back to his cell.

\\\\\

1

1    Presently pending before the court are several motions:  plaintiff's motion for an

2    extension of time to file a motion for a subpoena duces tecum; plaintiff's motion for a subpoena

3    duces tecum; plaintiff's motion for an extension of time to file additional evidentiary material in

4    support of his opposition to defendant's motion for summary judgment; and plaintiff's motion

5    for reconsideration of a June 26, 2012 order.  Also pending before the court is defendant's

6    motion for summary judgment.  For the following reasons, plaintiff's motion for an extension of

7    time to file a motion for a subpoena duces tecum will be granted and his motion for a subpoena

8    duces tecum will be denied.  His motion for an extension of time to file additional evidentiary

9    materials will be granted and the materials plaintiff submitted on August 13, 2012 (Dkt. No. 71)

10    will be considered timely.  Finally, it is recommended that defendant's motion for summary

11    judgment be granted and that plaintiff's motion for reconsideration of the June 26, 2012 order be

12    denied.

13    II.  PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE A MOTION FOR A
     SUBPOENA DUCES TECUM AND PLAINTIFF'S MOTION FOR A SUBPOENA DUCES
14                                           TECUM

15    On December 9, 2011, defendant filed a motion for summary judgment.  Plaintiff

16    filed a response in opposition to defendant's motion for summary judgment.  Thereafter, plaintiff

17    filed a motion to compel.  Defendant responded to the motion to compel and asserted that the

18    motion was moot.  It appeared that the motion to compel and defendant's responses to plaintiff's

19    discovery requests had crossed in the mail.  In his reply, plaintiff acknowledged receiving the

20    documents from defendant but claimed that it was not moot as "[a]pparently defendant responded

21    to several of the requests by saying that the documents sought were not in her possession or

22    control but would have to be subpoenaed from the California Department of Corrections and

23    Rehabilitation (CDCR)."  (Dkt. 49 at p. 2.)  On May 17, 2012 plaintiff's motion to compel was

24    denied.  However, he was given twenty-one days to file a motion for the court to issue a

25    subpoena duces tecum directing the CDCR to produce documents.

26    \\\\\

2

1    Pursuant to the prisoner mailbox rule, see Houston v. Lack, 487 U.S. 266, 276

2    (1988), plaintiff filed a motion for an extension of time to file a motion for subpoena duces

3    tecum on the CDCR on July 16, 2012.  Plaintiff also contemporaneously filed a motion for

4    subpoena duces tecum.  In his motion for an extension of time to file a motion for subpoena

5    duces tecum, plaintiff asserts that he tried to file his motion for a subpoena duces tecum on or

6    about June 17, 2012 but it was returned by the Clerk on July 11, 2012 pursuant to Local Rule

7    250.2(c).  Local Rule 250.2(c) states that:  "Interrogatories, responses, and proofs of service

8    thereof shall not be filed unless and until there is a proceeding in which the interrogatories or

9    proof of service is at issue.  When required in a proceeding, only that part of the set of

10   interrogatories and answers that is in issue shall be filed."  Defendant argues that the motion for

11   an extension of time to file a motion for a subpoena duces tecum should be denied as untimely as

12   should his motion for a subpoena duces tecum.

13           While plaintiff's motion for an extension of time to file a motion for a subpoena

14   duces tecum was filed approximately one month after the deadline for him to file a motion for a

15   subpoena duces tecum was due, plaintiff did at least attempt to comply within the confines of the

16   May 17, 2012 order, albeit improperly.  While his initial filing did not appear to conform to the

17   Local Rule, he was at least attempting to act diligently.  Accordingly, plaintiff's motion for an

18   extension of time to file a motion for subpoena duces tecum will be granted and plaintiff's

19   motion for a subpoena duces tecum will be deemed timely filed.

20           Pursuant to Federal Rule of Civil Procedure 45(a)(2)(c), a subpoena may direct a

21   non-party to an action to produce documents or other tangible objects for inspection.  Because

22   plaintiff is proceeding in forma pauperis, he is generally entitled to obtain service of a subpoena

23   duces tecum by the United States Marshal.  See 28 U.S.C. § 1915(d).  However, the issuance of a

24   subpoena duces tecum, particularly by the U.S. Marshal, is subject to limitations.  As one court

25   has noted:

26   \\\\\

> Proper reliance on a subpoena duces tecum is limited by the relevance standards set forth in Federal Rule of Civil Procedure 26(b)(1)("[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claims or defense"); and considerations of burden and expense set forth in Federal Rules of Civil Procedure 26(b)(2) and 45(c)(1).  The "Federal Rules of Civil Procedure were not intended to burden a non-party with a duty to suffer excessive or unusual expenses in order to comply with a subpoena duces tecum."  Badman v. Stark, 139 F.R.D. 601, 605 (M.D. Pa. 1991) (requiring indigent plaintiff to demonstrate that he had "made provision for the costs of such discovery"), citing Cantaline v. Raymark Industries, Inc., 103 F.R.D. 447, 450 (S.D. Fla. 1984); see also United States v. Columbia Broadcasting System, Inc., 666 F.2d 364 (9th Cir. 1982) (court may award costs of compliance with subpoena to non-party). Non-parties are "entitled to have the benefit of this Court's vigilance" in considering these factors.  Badman, 139 F.R.D. at 605.  In addition, this court has generally required that a motion for issuance of a subpoena duces tecum be supported by:  (1) clear identification of the documents sought and from whom, and (2) a showing that the records are obtainable only through the identified third party.  See, e.g., Davis v. Ramen, 2010 WL 1948560, at *1 (E.D. Cal. 2010); Williams v. Adams, 2010 WL 148703, at *1 (E.D. Cal. 2010).

Heilman v. Lyons, Civ. No. 09-2721, 2010 WL 5168871, at *1 (E.D. Cal. Dec. 13, 2010).  The term "relevant" is further defined by the Federal Rules of Civil Procedure as information that is "reasonably calculated to lead to the discovery of admissible evidence," and it "need not be admissible at trial.  See FED. R. CIV. P. 26(b)(1).  Furthermore, "[d]istrict courts have broad discretion in determining relevancy for discovery purposes."  See Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 635 (9th Cir. 2005).

> In support of his motion for the court to issue a subpoena duces tecum on the CDCR, plaintiff states as follows:

> On 5-24-12 I received this court's order and findings and recommendations dated 5-17-12 in which it states:  pg. 5 ln 11-12 that I have 21 days to submit a motion for subpoena duces tecum. As stated in my request for ext. of time to submit this motion for subpoena duces tecum I made errors and I now re-submit the subpoena duces tecum and ask that this court issue it to the California Dept. of corrections and rehabilitation at Mule Creek State Prison.

4

1
2

> I've filled out the form to the best of my abilities with all the
> information know to me and hope that I've done so correctly.

3   (Dkt. No. 64 at p. 1.)  In this case, plaintiff has not made a showing that the records he seeks are

4   only obtainable through the identified third party, the CDCR.  In his reply to his motion to

5   compel, plaintiff alluded to the fact that defendant Curtis responded to some of his requests that

6   she was not in possession of the documents he sought.  However, plaintiff does not attach

7   defendant's responses to his discovery requests, nor does he specifically state which requests he

8   made on defendant in which she stated that she was not in possession of the requested

9   documents.  Thus, the court cannot adequately discern whether the twenty-two document

10   requests to the CDCR he attaches to his motion are only obtainable from the CDCR.

11   Furthermore, at least some of his requests attached to his motion would be clearly available from

12   Curtis.  For example, plaintiff seeks documents from the CDCR related to the training defendant

13   Curtis received prior to and during her employment regarding medical training.  (See Pl.'s Mot.

14   Subpoena Duces Tecum at p. 11.)  The types of documents/information plaintiff seeks would

15   presumably be available directly from Curtis.  Accordingly, the motion for a subpoena duces

16   tecum will be denied.

17                          III.  SUMMARY JUDGMENT STANDARD

18              Summary judgment is appropriate when it is demonstrated that there exists "no

19   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

20   matter of law."  FED. R. CIV. P. 56(c).

21
22
23
24

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

25   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)).  "[W]here the

26   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

1  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

2  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

3  after adequate time for discovery and upon motion, against a party who fails to make a showing

4  sufficient to establish the existence of an element essential to that party's case, and on which that

5  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

6  concerning an essential element of the nonmoving party's case necessarily renders all other facts

7  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

8  whatever is before the district court demonstrates that the standard for entry of summary

9  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

10           If the moving party meets its initial responsibility, the burden then shifts to the

11  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

12  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

13  establish the existence of this factual dispute, the opposing party may not rely upon the

14  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

15  form of affidavits, and/or admissible discovery material, in support of its contention that the

16  dispute exists.  See FED. R. CIV. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

17  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

18  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

19  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

20  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

21  return a verdict for the nonmoving party.  See Wool v. Tandem Computers, Inc., 818 F.2d 1433,

22  1436 (9th Cir. 1987).

23           In the endeavor to establish the existence of a factual dispute, the opposing party

24  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

25  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

26  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

6

1  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

2  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e) advisory

3  committee's note on 1963 amendments).

4            In resolving the summary judgment motion, the court examines the pleadings,

5  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

6  any.  FED. R. CIV. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

7  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

8  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

9  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

10  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

11  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

12  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

13  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

14  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

15  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

16                          IV.  FACTUAL BACKGROUND[1]

17            Plaintiff Joseph Sickler was previously a prisoner incarcerated at Mule Creek

18  State Prison on February 22, 2010.[2]  (See Def.'s Undisputed Facts ¶ 1 ("DUP").)  At all times

19  relevant to the complaint, Traci Curtis was a licensed vocational nurse employed by the

20  California Department of Corrections & Rehabilitation at Mule Creek State Prison.  (See id. ¶ 2.)

21  During the evening pill call between approximately 8:20 p.m. to 8:30 p.m. in Facility A, Building

22  2, plaintiff was assaulted by another inmate wielding a razor blade resulting in two cuts, one on

23  his cheek and the second on his neck.  (See id. ¶ 3.)  After plaintiff was attacked, another inmate

24
        [1] The following facts within the factual background are undisputed by the parties.  (See
25  Dkt. No. 46.)

26        [2] Plaintiff is currently incarcerated at Kern Valley State Prison.  (See Dkt. No. 57.)

1  came to his assistance resulting in a brawl between no less than four inmates as plaintiff laid

2  down on the floor.  (See id. ¶ 4.)  Immediately thereafter, correctional staff discharged the block

3  gun at the fighting inmates and ordered inmates in the building to get down.  (See id. ¶ 5.)

4         Plaintiff suffered two lacerations in the fight.  A cut on plaintiff's cheek was two

5  and a half to three inches long and the cut on his neck was three inches long.  (See id. ¶ 7.)  After

6  all inmates were restrained, staff escorted the involved inmates out of the building at which time

7  plaintiff was taken to the Facility A clinic to have his lacerations evaluated by medical staff.

8  (See id. ¶ 8.)  Plaintiff walked the distance of two football fields between the building where the

9  assault occurred to the clinic.  (See id. ¶ 9.)  Plaintiff arrived at the clinic at 8:55 p.m..  LVN

10  Curtis assessed plaintiff's lacerations, cleansed them with a gauze and saline and determined that

11  they did not require sutures as the wounds were not deep and the bleeding had stopped.  (See id.

12  ¶ 10.)  Photographs were taken of plaintiff's wounds.  (See Pl.'s Deposition at p. 36-37.)

13         Plaintiff was then moved to the program office where he was placed into a

14  holding cell pending reassignment to Administrative Segregation due to the inmate fight.  (See

15  DUP ¶ 12.)  While inside of the program office, plaintiff requested to be seen by LVN Curtis

16  once again as his lacerations . . . began actively bleeding.  However, third watch custody staff

17  declined to take him back to the clinic.  (See id. ¶ 13.)

18         After several hours, at shift change the First Watch sergeant observed that

19  plaintiff's wound was oozing blood and directed that he be transported to Triage Treatment and

20  Assessment (TTA).  (See id. ¶ 14.)  Plaintiff walked over to the TTA with escorts.  Notably, the

21  escorts did not have to hold any compression on either his neck or jaw as the bleeding was minor.

22  (See id. ¶ 15.)

23         At approximately 1:00 a.m. on February 23, 2010, plaintiff was assessed by a

24  Registered Nurse at TTA who indicated that she believed that sutures may be indicated for the

25  lacerations.  (See id. ¶ 16.)  The RN then called the on-call physician to inquire if plaintiff should

26  be sent to an outside hospital for suturing.  However, the doctor advised the RN that the sutures

1  could wait until the following morning and ordered Ibuprofen for pain.  The RN placed steri-

2  strips on the wounds and duceted plaintiff to return to TTA in the morning at 9:45 a.m.  (See id. ¶

3  17.)

4          At approximately 10:00 a.m. the following morning, Plaintiff was assessed and

5  treated by TTA medical staff.  Dr. Naseer placed three sutures to close the laceration to plaintiff's

6  jaw and used dermabond and steri-strips to close the laceration to plaintiff's neck.  (See id. ¶ 18.)

7  Plaintiff tolerated the procedure well and was educated about the need to keep the wound clean

8  and report any signs of infection.  He was then prescribed antibiotics due to the risk of infection

9  and ducated to undergo a wound check in the yard clinic by an RN and to return to TTA in five

10  days for suture removal.  (See id. ¶ 19.)  Subsequent recheck of the wounds revealed that the

11  lacerations healed well and without infection.  (See id. ¶ 20.)

12                                    V.  DISCUSSION

13          Plaintiff asserts that defendant Curtis violated his Eighth Amendment right to be

14  free from cruel and unusual punishment when she was deliberately indifferent to his serious

15  medical needs.  He raises two claims against defendant Curtis.  First, he states that defendant

16  Curtis should have had her "med-pack" present during evening pill distribution and that she

17  could have provided on-site medical attention to his injuries ("Claim I").  Second, he states that

18  "Curtis failed to properly evaluate the extent of [his] injuries and told staff that [he] didn't

19  require any additional medical attention" ("Claim II").  (Pl.'s Complaint at p. 6.)

20          The Eighth Amendment's prohibition of cruel and unusual punishment extends to

21  medical care of prison inmates.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  In order to state

22  a section 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a

23  prison inmate must allege "acts or omissions sufficiently harmful to evidence deliberate

24  indifference to serious medical needs."  Id. at 106.  The nature of a defendant's responses must be

25  such that the defendant purposefully ignores or fails to respond to a prisoner's pain or possible

26  medical need in order for "deliberate indifference" to be established.  McGuckin v. Smith, 974

F.2d 1050, 1060 (9th Cir. 1992), <u>overruled in part on other grounds</u>, <u>WMX Technologies, Inc. v.</u> <u>Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997).  A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  <u>Id.</u> at 1059 (internal quotation marks and citation omitted).  Deliberate indifference may occur when prison officials deny, delay, or intentionally interfere with medical treatment, or may be demonstrated by the way in which prison officials provide medical care.  <u>See</u> <u>Estelle</u>, 429 U.S. at 104-05.  However, a showing of merely inadvertent or even negligent medical care is not enough to establish a constitutional violation.  <u>See</u> <u>id.</u> at 105-06; <u>Frost v.</u> <u>Agnos</u>, 152 F.3d 1124, 1130 (9th Cir. 1998).  A difference of opinion about the proper course of treatment is not deliberate indifference nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation.  <u>See</u>, <u>e.g.</u>, <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1058 (9th Cir. 2004); <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989).  Furthermore, where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay caused "significant harm and that Defendants should have known this to be the case."  <u>Hallett v. Morgan</u>, 296 F.3d 732, 744 (9th Cir. 2002).  Mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference."  <u>Shapley v. Nev. Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

A.  Claim I

As previously stated, plaintiff's first claim is that Curtis was deliberately indifferent because she did not have a "med-pack" with her to immediately treat plaintiff's wounds during evening pill distribution.  Assuming for purposes of discussion that Curtis should have had a "med-pack" with her, petitioner failed to show that this amounted to deliberate indifference.  Curtis subsequently saw plaintiff a few minutes after the attack and treated his wounds with gauze and saline solution.  (See Dkt. No. 48 at p. 3).  Thus, in light of the fact that Curtis treated plaintiff a few minutes after the altercation occurred, plaintiff failed to show that

1    there is a material issue of fact with respect whether Curtis purposefully ignored or failed to

2    respond to plaintiff's injuries as alleged in Claim I.  See Hallett, 296 F.3d at 744.

3            B.  Claim II

4            Second, plaintiff asserts that Curtis' treatment (or lack thereof) of his wounds

5    once she did see him was deliberately indifferent.  Plaintiff admits that defendant cleaned his

6    wounds with gauze and saline and determined that they did not require sutures as the wounds

7    were not deep and the bleeding had stopped.  (See Dkt. No. 46 at p. 3.)  Accordingly, plaintiff

8    admits that he received some treatment from defendant.  The fact that plaintiff disagreed with the

9    propriety of the treatment he received from Curtis is insufficient to show that Curtis was

10   deliberately indifferent to his serious medical needs.  See, e.g., Toguchi, 391 F.3d at 1058 (9th

11   Cir. 2004); Sanchez, 891 F.2d at 242.

12           Curtis states in her declaration that she determined that sutures were not required

13   for plaintiff's wounds.  Plaintiff states that while he is not qualified to make such medical

14   determinations, Curtis should have referred him to the Triage and Treatment Area ("TTA") once

15   she completed her initial treatment and diagnosis of his injuries under the applicable prison

16   regulations.  He claims that had that been done, sutures could have been placed on his wounds

17   before the doctor left at 10:00 p.m.  Thus, he argues that "the policys [sic] and procedures which

18   L.V.N. T. Curtis failed to follow, proves that her actions were negligent and deliberately

19   indifferent.  CDCR policys [sic] and procedures are set forth to protect an inmate from such

20   actions by an L.V.N. doing what they want in disregard to policy."  (Dkt. No. 38 at p. 10.)

21           Plaintiff has to show that defendant Curtis was deliberately indifferent to a serious

22   medical need and that she was not simply negligent in her care of plaintiff.  Her treatment of

23   plaintiff (or lack thereof) at most only rises to the level of gross negligence which is insufficient

24   to establish an Eighth Amendment violation.  The Ninth Circuit has stated that "[w]hile poor

25   medical treatment will at a certain point rise to the level of a constitutional violation, mere

26   malpractice, or even gross negligence does not suffice."  Wood v. Housewright, 900 F.2d 1332,

1    1334 (9th Cir. 1990).  Curtis provided plaintiff with treatment and determined that sutures were

2    not needed for his wounds.  While it was ultimately determined that sutures were required, the

3    fact that Curtis misdiagnosed plaintiff's injuries does not constitute deliberate indifference; at

4    most, it constitutes gross negligence.  See Broughton v. Cutter Lab., 622 F.2d 458, 460 (9th Cir.

5    1980).

6            However, Claim II against Curtis is not simply due to her misdiagnosis of

7    plaintiff's injuries.  Plaintiff also argues that had Curtis followed applicable prison policies, she

8    would have referred him to TTA whereby he would have been seen by an R.N. and his wounds

9    could have been sutured before the doctor left for the evening at 10:00 p.m.  Thus, plaintiff also

10   asserts that Curtis' failure to refer him to TTA caused a delay in treatment which amounts to an

11   Eighth Amendment violation.

12           The undisputed facts are that plaintiff was seen by an R.N. between midnight and

13   1:00 a.m., or three-four hours after being seen by Curtis.  (See Dkt. No. 48 at p. 48.)  The nurse

14   then telephoned the on-call doctor at home.  He indicated that suturing plaintiff's wounds could

15   wait until the morning as opposed to sending plaintiff to an outside hospital for suturing.

16   Subsequently, at around 10:00 a.m. the next morning, plaintiff's wounds were sutured.

17           When the claim is based on a delay in treatment, "a prisoner can make 'no claim

18   for deliberate medical indifference unless the denial was harmful.'" McGuckin, 974 F.2d at 1060

19   (quoting Shapley, 766 F.2d at 407).  However, the harm caused by the delay need not be

20   "substantial." See id. (citing Wood, 900 F.2d at 1339-40; Hudson, 503 U.S. at 5-10).

21           Plaintiff fails to demonstrate that he was harmed by the delay caused by Curtis'

22   actions.  Curtis did not refer plaintiff to the TTA as she was purportedly supposed to do.

23   However, he was seen at the TTA by an R.N. approximately three-four hours after he was seen

24   by Curtis.  The R.N. then contacted the on-call doctor who determined that plaintiff's sutures

25   could wait until morning.  The fact that the doctor determined that suturing could wait until

26   morning indicates that plaintiff was not harmed by a delay attributable to Curtis in light of the

doctor's subsequent diagnosis.

In his declaration, plaintiff argues that he suffered pain as a result in the delay of the treatment he ultimately received the next morning.  He argues that he was in pain when the doctor re-opened and cleaned the wounds in preparation for suturing the morning after plaintiff was injured.  He also asserts that due to Curtis' deliberate indifference, he was forced to endure unnecessary pain and suffering, fear of death and increased risk of infection due to the delay.  Additionally, plaintiff claims that keloid scars developed as a result of the delay.  (See Dkt. No. 48 at p. 12-13.)

The infliction of pain can constitute an Eighth Amendment violation even if a delay in treatment does not impact further treatment.  See McGuckin, 974 F.2d at 1060; Gutierrez v. Peters, 111 F.3d 1364, 1372 (7th Cir. 1997).  The needless suffering of pain might be sufficient to demonstrate further harm.  See Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).  While the court does not discount that plaintiff may have been in pain when his wounds were reopened the following morning for cleaning and suturing, plaintiff was seen in the TTA a few hours after he was injured.  The doctor was the ultimate judge on whether plaintiff wounds would be sutured that night or the next morning.  Accordingly, under these circumstances, the pain that plaintiff allegedly suffered the following morning during the actual suturing procedure was not due to Curtis' treatment or lack thereof.  Additionally, the fact that the doctor determined that plaintiff could be sutured the next morning also indicates that plaintiff was not harmed by a three-four hour delay before he was seen in the TTA.

Plaintiff also alludes to the fact that he suffered keloid scars as a result of the delay in being sutured.  The defendant has included the declaration of Dr. Sahir Naseer who treated plaintiff the morning after he suffered his injuries.  Dr. Naseer states as follows:

> I see no indication of Mr. Sickler having developed keloid scarring in the medical records I have reviewed.  However, in my professional opinion to the extent plaintiff has any keloid scarring, it is not the primary risk behind any delay in suturing.  The primary risk in delay in suturing lacerations is infection in the wound, of

13

which there is no indication that an infection developed.
[¶]  Furthermore, it is my professional opinion that to the extent
Mr. Sickler has incurred a keloid scar, it would have developed
even if sutures and steri-strips would have been placed
immediately at the time of the first medical assessment by LVN
Curtis following the assault on the evening before.  Notably,
keloids are an overgrowth of collagen that form within scar tissue
itself and generally occur in individual with darker skin colors.
Keloids are not a known complication or risk from delay in
suturing lacerations.

(Dkt. No. 34, Ex. C ¶ 16-17.)

Initially, plaintiff did not submit any expert testimony to rebut the statements of

Dr. Naseer.  However, on July 6, 2012, the United States Court of Appeal for the Ninth Circuit

issued its opinion in Woods v. Carey, 684 F.3d 934 (9th Cir. 2012).  Subsequently, on July 13,

2012, the court provided plaintiff another copy of the fair notice requirements provided to pro se

litigants to sufficiently appraise them of the requirements necessary to defeat a motion for

summary judgment pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998).[3]  Plaintiff was

then given twenty-one days to file additional evidentiary materials.  (See Dkt. No. 61.)  Plaintiff

requested until August 23, 2012 to file additional evidentiary materials.  Good cause being found,

the motion for extension of time to file additional evidentiary materials will be granted.

Plaintiff subsequently filed additional evidentiary materials on August 13, 2012

which included a declaration from Lawrence J. Williamson.  Williamson states as follows in his

declaration:

I have been asked by Mr. Joseph Sickler to review his medical
records and legal file in an effort to present an unbiased but
experienced appraisal of the nursing and medical care delivered by
Ms. Tracey Curtis and the infirmary staff after he was assaulted at
the Mule Creek State Prison on February 22, 2010.

I have worked as an Emergency Department Registered Nurse in
Los Angeles for ten years prior to my entering medical school.  I
was previously certified as an EMT and LVN.  I completed

_____

[3]  Plaintiff had previously been provided a copy of these notice requirements on March
16, 2011.  (See Dkt. No. 14.)

1          medical school in 1997 and was Board Certified in Family
            Medicine in 2001.  Lastly, I have over 3500 hours of experience as
2          a solo physician in rural Emergency Medicine and over 3000 hours
            as lead and senior cruise physician aboard three different ships for
3          Holland America Line.  I have earned over 100 CMEs (Continuing
            Medical Education) in Emergency and Trauma medicine in the last
4          ten years including twice certifying in the American College of
            Surgeons program, Advanced Trauma Life Support.

5

6 (Dkt. No. 71 Ex A.)

7          Defendant argues that "plaintiff's expert witness declaration lacks foundation and

8 must not be considered as Mr. Williamson is not qualified to render an expert opinion as he does

9 not hold a valid medical or nursing license in California and his declaration is based wholly upon

10 speculation and conjecture."  (Dkt. No. 72 at p. 1.)  Defendant has included documentation which

11 supports her argument that Williamson surrendered his California medical license on May 31,

12 2012.  Nevertheless, it is unnecessary to resolve the parties' dispute over Williamson's

13 qualifications.  Even assuming Williamson is qualified as a medical expert, his declaration does

14 not create a material issue of fact sufficient to deny summary judgment in favor of defendant.

15          Williamson's declaration, while asserting that Curtis' treatment of plaintiff rose

16 "to the level of gross medical negligence," (see Dkt. No. 77 Ex. A at p. 8.), does not create a

17 material issue of fact that her treatment of plaintiff was deliberately indifferent.  Williamson

18 states that, "I am willing to state and attest that the overall medical management of Mr. Joseph

19 Sickler was far below the standards of appropriate nursing and medical care that should be

20 afforded all patients[.]"  (Id. at p. 11.)  As previously stated, gross medical negligence is

21 insufficient to sustain a prisoner's claim that defendant was deliberately indifferent to a serious

22 medical need.  A review of Williamson's declaration indicates that in his opinion, Curtis' actions

23 (or lack thereof) fell below the requisite standard of care.  However, it fails to create a material

24 issue of fact necessary to defeat defendant' summary judgment motion.

25          Furthermore, Williamson's declaration does not create a material issue of fact

26 with respect to the delay issue caused by Curtis.  The declaration is silent as to whether the delay

1    in suturing plaintiff's lacerations contributed to his keloid scarring.  Furthermore, as previously

2    stated, the delay attributable to Curtis was a few hours.  Plaintiff was sent to the TTA at around

3    midnight.  At that time, the doctor determined that suturing could wait until the next morning.

4    Accordingly, assuming without deciding that Williamson is adequate to testify as an expert, his

5    declaration does not create a material issue of fact on the issues presented in this case.

6                 For the foregoing reasons, summary judgment should be granted.

7                            VI.  MOTION FOR RECONSIDERATION

8                 On May 17, 2012, the undersigned construed plaintiff's motion for an order

9    granting him priority status in accessing the prison law library as a request for injunctive relief.

10   The undersigned recommended denying plaintiff's motion as he " provided no basis for this court

11   to interfere with the prison's administration of its law library."  (Dkt. No. 56 at p. 5.)  Plaintiff

12   was given twenty-one days to file objections to the findings and recommendations.  On June 26,

13   2012, the district judge adopted this recommendation in full.  On July 2, 2012, plaintiff's

14   objections to the May 17, 2012 findings and recommendations, which were dated June 21, 2012,

15   were entered on the docket.  On July 27, 2012, plaintiff's motion for reconsideration (which was

16   dated July 7, 2012 but contained no certificate of service) of the June 26, 2012 order was entered

17   on the docket.

18                In his motion for reconsideration, plaintiff states that he received the May 17,

19   2012 findings and recommendations on May 24, 2012 and was under the impression that the

20   twenty-one days he was given to file objections to the May 17, 2012 findings and

21   recommendations did not include weekends and holidays.  Thus, according to plaintiff, he was

22   under the impression that his objections were due on June 25, 2012.

23                "A motion for reconsideration should not be granted, . . . unless the . . . court is

24   presented with newly discovered evidence, committed clear error, or if there is an intervening

25   change in the controlling law."  Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571

26   F.3d 873, 880 (9th Cir. 2009) (citation omitted).  In previously recommending denying plaintiff's

16

motion, the court stated as follows:

> Plaintiff has failed to demonstrate that in the absence of preliminary injunctive relief he is likely to suffer actual injury in prosecuting his case. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." Caribbean Marine Servs. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1998), citing Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 472 (9th Cir. 1984). To the contrary, plaintiff has thus far prosecuted his case ably, and the negative effects of any new restrictions on his library access are belied by his continued ability to file motions and respond to defendant's filings.

(Dkt. No. 56 at p. 4-5.) After reviewing the motion for reconsideration and plaintiff's objections to the findings and recommendations, the motion for reconsideration should be denied. As stated in the findings and recommendations, plaintiff has prosecuted this case ably.

## VII.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1.   Plaintiff's motion for an extension of time to submit a subpoena duces tecum (Dkt. No. 65.) is GRANTED and plaintiff's motion for subpoena duces tecum (Dkt. No. 64.) is deemed timely;

2.   Plaintiff's motion for a subpoena duces tecum (Dkt. No. 64.) IS DENIED; and

3.   Plaintiff's motion for an extension of time to file additional evidentiary materials (Dkt. No. 70.) is GRANTED and plaintiff's additional evidentiary material submitted August 13, 2012 is deemed timely.

Furthermore, IT IS HEREBY RECOMMENDED that:

1.   Defendant's motion for summary judgment (Dkt. No. 34) be GRANTED; and

2.   Plaintiff's motion for reconsideration (Dkt. No. 63.) of the June 26, 2012 order be DENIED.

1    These findings and recommendations are submitted to the United States District

2 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven (7)

3 days after being served with these findings and recommendations, any party may file written

4 objections with the court and serve a copy on all parties.  Such a document should be captioned

5 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6 shall be served and filed within seven (7) days after service of the objections.  The parties are

7 advised that failure to file objections within the specified time may waive the right to appeal the

8 District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9    Dated: August 31, 2012

10

11                                    CAROLYN K. DELANEY
                                      UNITED STATES MAGISTRATE JUDGE
12

13

14   7
     sick0205.57

15

16

17

18

19

20

21

22

23

24

25

26